Hon. Thomas C. Jorling Commissioner, New York State Department of Environmental Conservation
Your counsel has requested a legal interpretation of a provision in chapter 536 of the Laws of 1987, codified under Environmental Conservation Law, § 27-1313, (1) (b).
Chapter 536 was prompted by difficulties in obtaining contractors to clean up inactive hazardous waste disposal sites and oil and chemical spills (Governor's Approval Memorandum, L 1987, ch 536). Contractors were reluctant to perform this remediation work and insurers were reluctant to provide coverage because of the strict liability standard applicable to hazardous materials torts and also because of the exposure created by common law joint and several liability (ibid.). Generally, chapter 536 limits the liability of contractors authorized to perform this work (ibid.).
The State of New York supervises and monitors the remediation program (id., § 27-1313). Chapter 536 also reconfirms the State's common law privilege of sovereign immunity for the acts of its officials and employees in performing these remediation duties (Governor's Approval Memorandum, L 1987, ch 536).
The strict liability standard and common law principles of joint and several liability applicable to parties responsible for the pollution which is being remediated remain unaffected (ibid.).
The provision in question is section 2 of chapter 536 which amends subdivision 1 of section 27-1313 by adding paragraph b. As amended, section 27-1313 (1) provides:
 "a. The department shall be responsible, as provided in this section, for inactive hazardous waste disposal site remedial programs except as provided in section one thousand three hundred eighty-nine-b of the public health law.
 "b. Section eight of the court of claims act or any other provision of law to the contrary notwithstanding, the state shall be immune from liability and action with respect to any act or omission done in the discharge of the department's aforesaid responsibility pursuant to this section; provided, however, that this paragraph shall not limit the liability which may otherwise exist for unlawful, willful or malicious acts or omissions on the part of the state, state agencies, or their officers, employees or agents; or for the ownership or responsibility for the disposal of hazardous waste, including the cost of cleanup, pursuant to this section" (emphasis supplied).
Your counsel indicates that concern has been expressed that the underscored language limits the State's immunity from liability in those instances where the State assumes control of an inactive hazardous waste site for cleanup purposes. The question counsel raises is whether the underscored language limiting the State's immunity applies only where the State is the owner of hazardous waste found at a site or is responsible for the improper disposal of hazardous waste at a site; or whether it also applies to the Department's inactive hazardous waste disposal sites remediation programs.
We believe that the language in question only applies where the State is the owner of hazardous wastes or is responsible for the improper disposal of hazardous wastes, pursuant to section 27-1313 (3) (a) and (4). While this conclusion seems plain based on our reading of all the pertinent statutory language and the relevant legislative history, we assume that the concern which you indicate has been expressed in some quarters arises from the use of the word "responsible" for two different purposes in section 27-1313.
Under section 27-1313 (1) (a) of the Environmental Conservation Law, the Department is "responsible" for inactive hazardous waste disposal site remedial programs. Whenever the Commissioner finds that hazardous wastes at an inactive site constitutes a significant threat to the environment, he may order the owner of the site and/or the person "responsible" for the disposal of hazardous wastes at the site to develop a remediation program, subject to the approval of the Department, and to implement the program (§ 27-1313[3] [a]). Under certain circumstances, the Department may develop and implement a remediation program for such a site (§ 27-1313 [3] [b], [5] [a] and [b]). These two uses of "responsible" are plainly different, as the context of their usage shows. It seems clear that the phrase "ownership or responsibility for the disposal of hazardous waste" in the last part of the newly added paragraph (b) of subdivision (1) of section 27-1313 refers to the comparable phrase in section 27-1313 (3) (a), not to DEC responsibility for remediation.
Moreover, the Legislature plainly intended that the first portion of new paragraph 1 (b) of section 27-1313 limit the State's liability regarding the Department's activities in the remediation of these sites. "[T]he state shall be immune from liability and action with respect to any act or omission done in the discharge of the department's aforesaid responsibility pursuant to this section." In the context of this paragraph, "aforesaid" can only be a reference to the Department's remediation activities (§ 27-1313 [1] [a]). DEC is responsible for remedial programs under this section (ibid.).
Thus, we believe it is clear that the proviso in paragraph 1 (b), stating that liability is not limited for the "ownership or responsibility for the disposal of hazardous wastes", only applies to hazardous wastes owned by the State or where the State is responsible for improper disposal. Only this statutory construction gives meaning to paragraph 1 (b) in its entirety.
Other amendments effectuated by chapter 536 buttress this interpretation for they indicate a legislative intent to limit the State's liability in supervising the cleanup of pollution by others and in cleaning up such sites. For example, section 6 of chapter 536 amended the Navigation Law, in terms substantially the same as section 27-1313 (1) (b) of the Environmental Conservation Law, to limit State liability in cleaning up petroleum spills but exposing the State to liability for its own improper discharges. Also, section 4 of chapter 536 limits the State's liability in supervising court ordered remediation of hazardous waste sites. See also, sections 1 and 8 of chapter 536.
The legislative history of chapter 536 confirms this construction of the paragraph in question. The Governor noted in his approval memorandum that "[t]he State of New York, in its sovereign capacity, supervises, monitors and otherwise participates in remediation activities for the protection of public health and the environment. The legislation reconfirms the State's common law privilege of sovereign immunity for the acts of its officials and employees when fulfilling these duties, as long as the conduct of such officials and employees is not willfully and maliciously tortious or otherwise unlawful" Approval Memorandum of the Governor, July 30, 1987). See also, July 29, 1987 Memorandum for the Governor from Robert Abrams, Attorney General, p 6; July 23, 1987 memorandum to Evan Davis, Counsel to the Governor, from Langdon Marsh, Executive Deputy Commissioner, Department of Environmental Conservation, pp 1-2; July 24, 1987 letter to Evan Davis, Counsel to the Governor, from State Senator Daly.
We conclude that the language in paragraph 1 (b) of section27-1313 of the Environmental Conservation Law, providing that the State's liability is not limited "for the ownership or responsibility for the disposal of hazardous waste, including the cost of cleanup, pursuant to this section", applies only in situations where the State is the owner of hazardous wastes found at a site or is responsible for the improper disposal of hazardous wastes at a site. It has no application to remediation activities of the Department of Environmental Conservation.